**E-FILED on** 1/28/13

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>  v.<br><br>ERNESTO NOGUEDA-PINO,<br><br>    Defendant. | No. CR-11-00704 RMW<br><br>**ORDER RE DEFENDANTS' MOTION TO DISMISS**<br><br>**[Re Docket No. 16]** |

Defendant Ernesto Nogueda-Pino has moved to dismiss the Superseding Indictment charging him with one count of illegal re-entry following deportation in violation of 8 U.S.C. § 1326(a) and (b). Defendant collaterally challenges the predicate deportations for that charge. Defendant was deported on May 11, 2000 and April 4, 2006 as the result of deportation hearings and on September 1, 2006 and September 14, 2006 based upon reinstatements of the April 4, 2006 order of deportation. The court concludes that defendant's motion has merit and, therefore, is granted. The Immigration Judge ("IJ") failed to adequately advise defendant of his eligibility for voluntary departure and what he needed to do to apply for it. This failure constitutes a violation of due process and precludes the use of any of defendant's prior deportations to fulfill the prior deportation element of the § 1326 charge. The court, therefore, dismisses the Superseding Indictment.

**I**

In order to succeed on a collateral attack, a defendant must establish (1) that he exhausted available administrative remedies, (2) that the deportation proceedings deprived him of the opportunity for judicial review, and (3) that the deportation order was "fundamentally unfair." 8 U.S.C. § 1326(d). However, a defendant need not fulfill the exhaustion requirement when an Immigration Judge ("IJ") fails to "inform him that he [is] eligible for relief from deportation." *United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1049 (9th Cir. 2004). Additionally, an IJ's failure to inform a defendant of possible relief deprives him of the opportunity for judicial review. *See United States v. Ortiz–Lopez*, 385 F.3d 1202, 1204 n.2 (9th Cir. 2004). An individual need not prove that he "actually would have been granted relief" in order to establish prejudice, but instead must show that he had a "plausible" ground for relief from deportation. *Ubaldo–Figueroa*, 364 F.3d at 1050. The IJ must inform an alien of any apparent eligibility for relief from deportation and give the alien the opportunity to pursue that form of relief. *See United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000) (*quoting United States v. Arce-Hernandez*, 163 F.3d 559, 565 (9th Cir. 1998)); *Ubaldo-Figueroa,* 364 F.3d at 1050; *United States v. Ramos*, 623 F.3d 672, 681 (9th Cir. 2010); 8 C.F.R. § 1240.11(a)(2). A failure to do so constitutes a breach of IJ's duty and is a violation of due process. *See Ubaldo-Figueroa*, 364 F.3d 1042 at 1049-50. "Even if the alien's eligibility is not 'clearly disclosed' in the record, the IJ has a duty to discuss discretionary relief with the alien so long as the record as a whole raises a 'reasonable possibility' of eligibility for such relief." *United States v. Andrade-Partida*, 110 F. Supp.2d 1260, 1268 (N.D. Cal. 2000).

**II**

The government argues that Nogueda-Pino was informed of his right to voluntary departure by the Notice to Appear form that he was given before each of his removal hearings and by the advice of the IJ at each hearing. The form, written in English, says: "You will be advised by the immigration judge before whom you appear, of any relief from removal for which you may appear eligible including the privilege of departing voluntarily. You will be given a reasonable opportunity to make any such application to the immigration judge." Dkt. No. 32, Ex. 1; Ex. 4. Despite this assurance, however, the tape recordings of the hearings do not show that Nogueda-Pino was

ORDER RE DEFENDANT'S MOTION TO DISMISS
No. CR-11-00704 RMW

2

adequately advised of his potential eligibility for pre-hearing or post-hearing voluntary departure or given a reasonable opportunity to apply for either.

The relevant portion of the tape recording of the May 11, 2000 hearing reveals the following colloquy between the IJ and the defendant through a Spanish interpreter:

> IJ: Do you want your case postponed to get an attorney or do you want your case heard today?
>
> THE DEFENDANT: No.
>
> Q: Do you want more time to get an attorney or do you want your case decided today?
>
> THE DEFENDANT: No.
>
> Q: Pick one. Do you want your case heard today, or do you want more time to get an attorney? Choose one of those, sir.
>
> THE DEFENDANT: No.
>
> Q: You can't say no. Choose one of those. More time, or decided today?
>
> THE DEFENDANT: Today.
>
> \*\*\*
>
> Q: Based upon your testimony, I find you subject to removal as charged. What country do you want to be removed to?
>
> THE DEFENDANT: Mexico
>
> Q. Do you have the fare to return to that country?
>
> THE DEFENDANT: No.
>
> Q: (Inaudible)?
>
> THE DEFENDANT: No.
>
> Q: (Inaudible) $7.50 to pay your way back to Mexico to qualify for voluntary departure to this location. Do you have that money?
>
> THE DEFENDANT: No.
>
> Q: Do you have any lawful family in the United States?
>
> THE DEFENDANT: No.
>
> \* \* \*
>
> Q: Do you want to file an appeal, or waive appeal, sir?
>
> THE DEFENDANT: Waive.

ORDER RE DEFENDANT'S MOTION TO DISMISS
No. CR-11-00704 RMW

Dkt. No. 57, Ex. 1.

Defendant was statutorily eligible for at least pre-hearing voluntary departure but he needed to apply before the completion of removal proceedings. *See* 8 U.S.C. § 1229c(a)(1). Despite defendants's apparent eligibility, the recording of the colloquy between the IJ and defendant does not show that the defendant was advised of the possibility that he was eligible for voluntary departure or even what voluntary departure meant. The advice he was given was clearly insufficient, particularly since the defendant was non-English speaking, representing himself and apparently having trouble understanding the IJ's questions. *See United States v. Resuleo-Flores*, 2012 WL 761701 *6 (N.D. Cal. 2012) (because aliens appearing *pro se* often lack the legal knowledge to navigate their way successfully through immigration law, and because of the consequence of expulsion from the United States, the IJ Must "scrupulously and conscientiously probe into" the relevant facts). The only reference to voluntary departure even made by the IJ was in the question to defendant asking him whether he had $7.50 to pay his way to Mexico. There is no way to tell if the defendant's response meant that he did not have $7.50 in his pocket or had no way to get $7.50 or something else.

The Government contends that even if defendant was inadequately advised regarding voluntary departure, he was not prejudiced because there is no right to voluntary departure (*see United States v. Cervantes-Martinez*, 2011 WL 44348161 (S.D. Cal. 2011)), and, in any event, he did not have the funds necessary to voluntarily depart. As to the first contention, the Government is correct that there is no right to voluntary departure. However, this does not mean that a defendant does not have a due process right to advice regarding his right to apply. *See, e.g.*, *United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012). An IJ has a duty to do more than inform a detainee of the possibility of relief in order to maintain the detainee's due process rights; he must specifically advise the alien of what relief he is eligible for and give him the opportunity to develop the issue, including providing an opportunity to apply for relief. *Id.*

As to the contention that defendant did not have the necessary funds to voluntarily depart, the defendant's response regarding whether he had $7.50 is not adequate to establish he did not have the means to obtain the funds to enable him to voluntarily depart.

**III**

ORDER RE DEFENDANT'S MOTION TO DISMISS
No. CR-11-00704 RMW

4

At the April 4, 2006 hearing the IJ did advise defendant in an eight group removal proceeding session about the possibility of voluntary departure. The recording of that group session shows that the following advice was given:

> If you are not eligible to remain in the United States, you may be eligible for the relief of voluntary departure. That means you would leave the United States voluntarily as opposed to being removed and deported.
>
> The benefits of being granted voluntary departure are that you can return to the United States legally in the future without certain time restrictions.
>
> If you are ordered removed and deported from the United States, you can be barred for a minimum of 10 years from returning legally.
>
> If you are eligible for voluntary departure, I will ask you if you have the amount of money to pay your own way back to your own country.
>
> It is alleged the majority are native and citizens of Mexico. The cost to Mexico from this location by bus, as I have been told by government attorneys on past occasions, is seven dollars. I will ask each of you if you have that amount of money. If you do, I will ask the government attorney their position. *If the government attorney is not opposed to voluntary departure being granted, I will grant it today and you can return to Mexico today.*

Dkt. No. 57, Ex. 2 (emphasis added).

At defendant's individual session following the group session, the following exchange took place regarding voluntary departure:

> Q: Based on your testimony, I find you are subject to (unintelligible) as charged.
>
> * * *
>
> THE COURT: Do you wish to apply for voluntary departure?
>
> THE DEFENDANT: Could I apply so that the case could be - - could end today?
>
> THE COURT: Do you want your case postponed for voluntary departure or do you want your case ended today?
>
> THE COURT: End it today.

Dkt. No. 57, Ex. 3.

The court finds the individual colloquy between defendant and the IJ inadequate to explain the option of applying for voluntary departure, particularly since it followed the IJ's advice to the group that if the government attorney did not object, a detainee could depart for Mexico that

ORDER RE DEFENDANT'S MOTION TO DISMISS
No. CR-11-00704 RMW

day. It is not clear what the defendant was asking but it appears he was asking if he could voluntarily depart that day and that he received no answer or further explanation about applying for voluntary departure.

Although defendant's declaration is suspiciously self-serving, defendant claims that he would have chosen to voluntarily depart had he been informed about voluntary departure and that he could have afforded the bond necessary for voluntary departure and a ticket to Mexico because he was working full time as a butcher and his entire family lived in the United States (mother, wife, children, brothers and sisters, half-bothers and sisters and aunts and uncles).

The government asserts that defendant was not prejudiced by any inadequacy of the advice given by the IJ because pre-hearing voluntary departure is unavailable to an alien who has been previously permitted to voluntarily depart. *See* 8 U.S.C. § 1229c(c). If defendant had been permitted to voluntarily depart at the time of his May 11, 2000 hearing, the Government submits that he would not have been eligible for voluntary departure at the time of his April 4, 2005 hearing. The government further contends that defendant was precluded from post-hearing voluntary departure because he had been convicted of welfare fraud in 2000. Conviction of a crime of moral turpitude precludes an alien from qualifying for post-hearing voluntary departure. *See* 8 U.S.C. § 1229c(b)(1)(B).

8 U.S.C. § 1229c(c), does not prohibit multiple grants of pre-hearing voluntary departure, contrary to the government's assertion. Rather, it bars pre-hearing voluntary departure if the alien has
previously been granted voluntary departure "after having been found inadmissible" for entering without inspection. *Id.* Because only an IJ can make a finding of inadmissibility (8 U.S.C. § 1229a(a)), the prohibition in § 1229c(c) is triggered only after a hearing or other determination of inadmissibility. *See, e.g., United States v. Rodriguez-Magana*, 2006 WL 3469594 (E.D. Wash. 2006). Therefore, even if defendant had been permitted to make a voluntarily pre-hearing departure in May 2000, it is plausible that he would have been granted the opportunity to voluntarily depart in 2006.

ORDER RE DEFENDANT'S MOTION TO DISMISS
No. CR-11-00704 RMW

Even if Nogueda was not eligible for more than one grant of pre-hearing voluntary departure, he was still eligible for post-hearing voluntary departure after his second removal hearing. The Government claims that it is not plausible that Mr. Nogueda would have received this relief because of his conviction for welfare fraud. However, the conviction would not have prevented Nogueda from plausibly receiving relief. First, the conviction was remote in time by the second hearing (more than five years old). Second, the IJ could have plausibly found that the negative inference drawn as to defendant's moral character would have been outweighed by factors including Nogueda's ability and willingness to depart at his own cost; the length of his residence in the United States; his immediate and extended family who resided in the United States; and his long term work as a butcher in the United States. *See* Dkt. No. 36 (Nogueda Decl.); *Matter of Gamboa*, 14 I&N Dec. 244, 248 (BIA 1972). Therefore, Nogueda was prejudiced by the IJ's failure to meaningfully advise him of the relief for which he was eligible and plausibly could have received.

## IV

Since Nogueda suffered prejudice as a result of the IJ's failure to adequately advise him of his eligibility to apply for voluntary departure, thus violating his due process rights, he is entitled to collaterally attack the prior deportations on which his current § 1326 violation is predicated. He has successfully done that. The Superseding Indictment is dismissed.

DATED: January 28, 2013

*[signature: Ronald M. Whyte]*
RONALD M. WHYTE
United States District Judge

ORDER RE DEFENDANT'S MOTION TO DISMISS
No. CR-11-00704 RMW